The STATE of Ohio, Appellee,

v.

SIEGEL, Appellant.

[Cite as *State v. Siegel* (2000), 138 Ohio App.3d 562.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8–2000–05.

Decided Aug. 14, 2000.

*Marc S. Triplett,* for appellant.

*William T. Goslee,* City Prosecutor, for appellee.

_____

THOMAS F. BRYANT, Judge.

This appeal is taken by defendant-appellant Steven Siegel from the judgment entered by the Bellefontaine Municipal Court convicting him of driving under the influence of alcohol a violation of R.C. 4511.19(A)(3).

On the evening of September 18, 1999, at approximately 11:20 p.m. Sergeant Mike Kilgore was patrolling east on S.R. 274 when he recorded a vehicle going west at sixty-nine miles per hour. The vehicle was being driven by Steven Siegel. Kilgore activated his lights and pursued the vehicle. Siegel immediately pulled over in the parking lot of Muchinippi Church.

Upon approaching the vehicle Kilgore could smell the odor of alcoholic beverages and noticed that Siegel was having trouble handling his wallet. As a result, Kilgore asked Siegel to get out of the vehicle. Once out of the vehicle Kilgore asked Siegel to perform three field sobriety tests. Siegel was unable to complete

any of the tests and Kilgore placed him under arrest for driving under the influence and proceeded to read him his *Miranda* rights.

While Siegel was seated in the patrol car Kilgore called for a wrecker to tow Siegel's vehicle. After the tow truck arrived, Kilgore drove Siegel back to the Logan County Sheriff's Department. Kilgore after removing all foreign articles from Siegel's clothing, placed him in a holding cell. The holding cell was equipped with a toilet and a sink. After observing Siegel for the requisite twenty-minute observation period Siegel was given a blood alcohol content ("BAC") test on which Siegel registered .135, a reading above the legal limit. Siegel was then charged with operating a motor vehicle while under the influence of alcohol, a violation of R.C. 4511.19(A)(1).

On September 20, 1999, Siegel was arraigned and entered a plea of not guilty. Siegel filed a motion to suppress the BAC test results and on January 11, 2000, the municipal court held a hearing on Siegel's motion to suppress. At the hearing Kilgore and Siegel both recounted the events surrounding the evening of September 13, 1999. Siegel claimed that no one observed him during the time he spent in the holding cell. Further Siegel claimed that while in the holding cell he ingested water. He testified:

"Q: How long were you in that holding?

"A: Seemed like an hour, but I don't really think it was. I think it was 45 or 50 minutes before they got me back out.

"Q: And was there anyone watching you?

"A: I was laying there on the cot or whatever. They have the little shelf. I didn't see anyone look in the whole time. They could have had cameras on me.

"Q: But you don't know?

"A: Well, I didn't see what they saw so; but I was kind of watching the door, and I was in the one with the big window, which is right next to their desk.

"Q: Did you consume anything while you were there?

"A: Oh, yeah.

"Q: What was that?

"A: Water, quite a bit.

"Q: Okay. And when you were finally pulled out of the holding cell there, did you proceed to the Breathalyzer machine then?

"A: Yes."

On January 13, 2000, the municipal court denied Siegel's motion to suppress and reassigned the matter for jury trial on February 2, 2000. At the motion to

suppress hearing the court stated the following reasons for denying the motion to suppress:

"Well, in regard to the 20–minute issue and the failure of the officer to observe the defendant for 20 minutes immediately prior to taking the test to prevent the consumption of any more substance, the weight of the case law is clear that if there was a breach of the 20–minute standard that it's incumbent upon the defendant do (*sic*) show some precedent as a result of that; · so I don't think the burden is on the State. I think the burden is on the movant to move himself by the fact that the defendant consumed some water during the 20–minute period of time * * *

"So I'm going to deny the motion to suppress evidence in this case."

On February 1, 2000, Siegel entered a plea of no contest to the charge. On appeal from that judgment entry Siegel makes the following sole assignment of error:

"The trial court erred in failing to suppress the results of the breath test where the evidence demonstrated the Appellant's ingestion of foreign substances during the twenty-minute observation period required by the Ohio Department of Health."

In his sole assignment of error Siegel claims that the trial court erred by denying his motion to suppress evidence. Specifically, Siegel claims the breath test results should be suppressed because the Ohio Department of Health mandates that Siegel be observed for twenty minutes to prevent the oral intake of any substance and during that twenty-minute observation period Siegel ingested water from the tap in his holding cell.

▮▮▮ The denial of a motion to suppress involves a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982. Consequently, in its review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726, 727. However, an appellate court determines as a matter of law, without deferring to the trial court's conclusions, whether these facts meet the applicable legal standard. *State v. Vance* (1994), 98 Ohio App.3d 56, 58, 647 N.E.2d 851 quoting *State v. Williams* (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143; *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141, 1142–1143.

Ohio Department of Health regulations impose specific requirements for the administration of BAC tests. One requirement is that the person being tested be

observed for twenty minutes before the test to prevent the oral intake of any material. Ohio Adm.Code 3701–53–02(B).

The Ohio Supreme Court, in *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902, syllabus, held that absent a showing of prejudice to a defendant, the results of an alcohol test administered in "substantial compliance" with the Ohio Department of Health regulations governing alcohol testing are admissible in evidence for prosecution of a case under R.C. 4511.19. The Ohio Supreme Court has consistently held that substantial compliance with pertinent regulations resolves the issue of the admissibility of the BAC test result. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 573 N.E.2d 32; *Plummer, supra*; *State v. Dickerson* (1986), 25 Ohio St.3d 64, 25 OBR 86, 495 N.E.2d 6; *State v. Steele* (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740.

Siegel argues that the "substantial compliance" standard formulated by the Supreme Court and articulated above is not applicable to the oral intake of material. He claims that the purpose of the statute is to prevent oral intake of any substance. In support of his argument Siegel relies on *State v. Karns* (July 21, 1998) Fairfield App. No. 97CA0002, unreported, 1998 WL 550708.

In *Karns* the Fifth District held that the "substantial compliance" analysis was not applicable to the oral intake of any material and that the accused was not required to show prejudice before the results were inadmissible. In coming to that conclusion the Fifth District reasoned:

"Our conclusion that this case scenario does not yield itself to a substantial compliance test is buttressed by the fact that the language of the regulation itself prohibits the intake of any material, not just material which may contain alcohol or otherwise may affect the test results."

The state argues that the burden is on Siegel to show not only that he drank water during the twenty-minute observation period but, in addition, he must present some evidence that consuming water would have a prejudicial effect on the validity of his breath test. In support, the state cites the litany of cases released by the Supreme Court that "substantial compliance" with the regulations absent a showing of prejudice does not render the test inadmissible.

Before analyzing the validity of the foregoing arguments posed by the parties on appeal and the appropriate statutes and authority implicated by the circumstances of the case it must be noted that R.C. 4511.19(A)(3) is a strict liability statute and therefore must be liberally construed in favor of the accused.

The state's first argument is that the "substantial compliance" analysis set forth by the Supreme Court and outlined above is applicable to the determination that an accused has orally ingested any material. We do not agree.

In *State v. Steele* (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740, the Supreme Court of Ohio held that strict compliance with the Department of Health regulations was not necessary in order for test results to be admissible. In *Steele,* the Court found that even though the arresting officer diverted his attention from the defendant for a few seconds while the officer exited and walked around his patrol car the twenty-minute observation period required by the Ohio Department of Health regulations had essentially been fulfilled.

In *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902, the Supreme Court of Ohio based upon its reasoning in *Steele* held that "[a]bsent a showing of prejudice to a defendant, the results of a urine-alcohol test administered in substantial compliance with Ohio Adm.Code 3701–53–05 are admissible in a prosecution under R.C. 4511.19." In 1996 in *Bolivar v. Dick* (1996) 76 Ohio St.3d 216, 667 N.E.2d 18, the Supreme Court of Ohio adopted the holding of *Plummer* and held that a breath alcohol test administered in substantial compliance with the Ohio Department of Health regulations is admissible absent a showing of prejudice.

Further, the Supreme Court has made it clear that the sole purpose of the twenty minute observation period "is to prevent the oral intake of any material." *State v. Steele* (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740; *Bolivar v. Dick* (1996), 76 Ohio St.3d 216, 667 N.E.2d 18. The rule itself reflects this interpretation.

■ The authority outlined above suggests that "substantial compliance" with the Ohio Department of Regulations is possible as long as the accused does not orally intake any material during the twenty-minute observation period. Once an accused orally intakes any material the purpose behind the administrative regulations is obliterated. It follows then that if an accused orally ingests any material within the twenty-minute observation, the test as administered was not in "substantial compliance" with the Ohio Department of Health regulations.

Further, the Fifth District reasoned, and we agree, that the determination of whether an individual has ingested any material during the observation period does not lend itself to a "substantial compliance" analysis and that the "substantial compliance" test does not apply to the determination of whether or not an individual ingested any material during the twenty-minute observation period.

Even so, the state urges this court that because Siegel has failed to show that he was prejudiced by the intake of water during the twenty-minute observation period that the judgment of the Municipal Court denying his motion to suppress should be affirmed.

■ In *State v. Gasser* (1980), 5 Ohio App.3d 217, 5 OBR 501, 451 N.E.2d 249, this court held that burden of proof in a motion to suppress the results of a blood

alcohol test are on the prosecution to the extent that "the defendant takes issue with the legality of the test." This court further explained in *Defiance v. Stafford* (Feb. 7, 1992) Defiance App. No. 4–88–10, unreported, 1992 WL 24864, that once the accused has articulated his objections to the tests, then the burden shifts to the prosecution in demonstrating that the "alleged errors did not occur or, if they did occur, they had no effect on the test results."

The Second District has explained the burdens on the parties to a motion to suppress a breath alcohol test in a similar fashion. In *State v. Adams* (1992) 73 Ohio App.3d 735, 598 N.E.2d 176, the court, relying on Supreme Court authority, wrote:

"The purpose of the observation rule is to require positive evidence that during the twenty minutes prior to the test the accused did not ingest some material which might produce an inaccurate test result. *State v. Steele* (1977), 52 Ohio St.2d 187[, 6 O.O.3d 418], 370 N.E.2d 740. A witness who testifies to the that foundational fact is not required to show that the subject was constantly within his gaze, but only that during the relevant period the subject was kept in such a location or condition or under such circumstances that one may reasonably infer that his ingestion of any material without the knowledge of the witness is unlikely or improbable. *To overcome that inference, the accused must show that he or she did, in fact, ingest some material during the twenty-minute period. The 'mere assertain that ingestion was hypothetically possible ought not to vitiate the observation period foundational fact so as to render the breathalyzer test results inadmissible.'* Id. at 192 [6 O.O.3d at 421], 370 N.E.2d at 743."

The record reveals that during the hearing on the motion to suppress Siegel presented evidence that while in his holding cell during the twenty-minute observation period he did, indeed, ingest water. The state offered no conflicting testimony and in fact, did not deny that Siegel ingested water. Further, the state did not present any evidence that ingestion of large quantities of water during the twenty-minute observation period before the BAC test will not effect the results.

Therefore because Siegel presented evidence that he ingested water during the twenty-minute observation period and that testimony was uncontested, the burden shifted to the state to prove that the test results were not prejudiced by the intake of water. Moreover, the state failed to present any evidence that the BAC results were not prejudiced by the intake of water. Therefore, we determine as a matter of law that the facts presented on appeal fail to meet the applicable legal standard outlined above. Error having been shown Siegel's sole assignment of error is sustained.

Siegel pleaded no contest after the municipal court denied his motion to suppress. However, we have determined that the trial court erred by not suppressing the breath test results. We therefore, reverse Siegel's conviction and remand this matter for proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WALTERS and SHAW, JJ., concur.