DECISION
{¶ 1} The city of Cincinnati appeals the trial court's judgment granting Charlotte Wood's motion to suppress the result of her Intoxilyzer 5000 breath test. We reverse.
 {¶ 2} Wood was involved in a car accident that caused the airbags in her car to deploy. Police officer Michael Flamm responded to the scene of the accident and later drove Wood to a police station where he administered an Intoxilyzer 5000 breath test. At Wood's suppression hearing, Flamm stated that he had observed Wood for over 20 minutes before testing her. Flamm did not see Wood put anything into her mouth during this period. Wood testified that she had been wearing braces at the time of the accident, and that the impact from the airbags had caused her braces to cut the inside of her lip. Wood claimed that she had been bleeding into her mouth throughout the observation period. She also stated that she was continuously licking the blood off the inside of her lip during this time. Flamm did not notice Wood bleeding. He did not, however, examine the inside of her mouth.
 {¶ 3} The trial court granted Wood's motion to suppress on the grounds that Wood had had blood in her mouth and had ingested blood during the 20-minute observation period, in violation of Ohio Department of Health regulations. In one assignment of error, the city now contends that the trial court erred in its ruling.
 {¶ 4} Our review of a ruling on a motion to suppress involves mixed questions of law and fact.[1] When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses *Page 3 
and the weight of the evidence.[2] We must accept the trial court's findings of fact as true if they are supported by competent and credible evidence.[3] However, with respect to the trial court's conclusions of law, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard.[4]
 {¶ 5} When a defendant challenges the admission of a breath-test result by way of a motion to suppress, the state must demonstrate that it complied with the testing methods approved by the Ohio Director of Health.[5] At issue in this case is whether the city demonstrated that it had complied with Ohio Adm. Code 3701-53-02(C). In pertinent part, that regulation provides that law enforcement must follow a breath-testing machine's operational checklist when administering a breath test. The checklist for the Intoxilyzer 5000 provided that police had to "[o]bserve subject for twenty minutes prior to testing to prevent oral intake of any material."
 {¶ 6} In this case, the city does not challenge the trial court's factual findings. It argues, instead, that the court should have concluded that police had complied with the checklist requirement because Wood's blood was not a "foreign" substance. We agree.
 {¶ 7} In our view, the prohibition against "oral intake" does not apply to the test subject's own bodily fluids. The test subject's saliva will most certainly always be present during a breath test. And like saliva, blood is a bodily fluid. We therefore agree with the city's interpretation that the checklist requirement only restricts the intake of material not normally found in the test subject's body.[6] *Page 4 
 {¶ 8} Here, it was uncontested that Officer Flamm observed Wood for over 20 minutes prior to testing her, and that she put nothing from outside her body into her mouth during this period. We therefore hold that the city demonstrated that police did not deviate from the checklist requirement and that there was strict compliance with the challenged procedure.
 {¶ 9} The city next contends that Wood's breath-test result should not have been suppressed because Wood failed to demonstrate prejudice arising from the presence and ingestion of the blood that was in her mouth. But under these circumstances, where the city had demonstrated strict compliance, the burden never shifted to Wood to demonstrate prejudice.[7] Instead, the test result was admissible, and evidence of prejudice was relevant only insofar as Wood wished to attack the weight of the evidence at trial.[8]
 {¶ 10} The city's sole assignment of error is sustained. We reverse the judgment of the trial court granting Wood's motion to suppress the result of her breath test and remand this cause for further proceedings.
Judgment reversed and cause remanded.
DINKELACKER, J., concurs.
HILDEBRANDT, P.J., dissents.
[1] State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372,797 N.E.2d 71, at ¶ 8.
[2] Id.; see, also, State v. Fanning (1982), 1 Ohio St.3d 19, 20,437 N.E.2d 583.
[3] Burnside, supra.
[4] Id.
[5] Burnside at ¶ 24; R.C. 4511.19(D)(1)(b).
[6] See, e.g., State v. Dixson, 5th Dist No. 2002CA0132, 2002-Ohio-6174 (breath-test result should not have been admitted where defendant was observed for only fourteen minutes and had eaten a breath mint during the observation period); State v.Baldridge, 5th Dist. No. 01-COA-01412, 2001-Ohio-7029 (presence of snuff in defendant's mouth during observation period rendered test result inadmissible); State v. Seigle, 138 Ohio App.3d 562, 2000-Ohio-1747,741 N.E.2d 938 (breath-test result properly suppressed where defendant had consumed water during the observation period).
[7] See Cincinnati v. Sand (1975), 43 Ohio St.2d 79, 87,330 N.E.2d 908; Burnside at ¶ 24; see, also See R.C. 4511.19(D.
[8] Id.