OPINION
{¶ 1} The defendant-appellant, Raymond E. Bressler ("Bressler"), appeals the June 3, 2005 Judgment of conviction and sentence entered in the Van Wert County Court of Common Pleas, Ohio, assigning as error the trial court's decision to overrule Bressler's motion to suppress.
 {¶ 2} On December 19, 2004, at approximately 2:00 a.m., Sergeant Douglas J. Wiegle made a traffic stop of a vehicle operated by Bressler. Sgt. Wiegle observed Bressler weaving within his lane, accelerating towards a stop sign, spinning out his tires when accelerating from the stop sign, and running his right rear tire over a curb in making a right hand turn onto another street. Thus, Sgt. Wiegle initiated the traffic stop.
 {¶ 3} When he first approached the vehicle, he identified the parties in the vehicle and observed that Bressler was attempting to hide something between his legs. At that point, Sgt. Wiegle called for back up and asked Bressler to step out of the vehicle. Bressler moved the object that was between his legs and hid it between the seat and the center console in the vehicle, then after numerous attempts to open the vehicle door he got out. Next, Officer W. Joe Bruns of the Van Wert Police Department arrived on the scene and assisted Sgt. Wiegle in restraining Bressler while Sgt. Wiegle went back to find what Bressler was attempting to hide. Officer Bruns searched Bressler and found over two grams of powder cocaine on his person; thus, Bressler was arrested and secured in the back of Officer Motycka's car by Officer Bruns. Upon checking the vehicle for the hidden item, Sgt. Wiegle found a glass vial used to cook crack cocaine and a partially burnt marijuana cigarette in the ashtray.
 {¶ 4} At this point, the two passengers in the car, Gregory Thatcher ("Thatcher") and Robert Pollock ("Pollock") were removed from the vehicle and each consented to a search of their persons. Sgt. Wiegle questioned Thatcher, who provided no additional information, while Officer Bruns spoke with Pollock. Pollock told Officer Bruns that they were on their way to Bressler's residence and that he had observed a crack pipe on a table and a blue bag with cocaine when he was in the residence earlier that day. He also informed Officer Bruns that he "should hurry because there was a female inside the house and she would destroy the evidence." Affidavit for Search Warrant, December 19, 2004.
 {¶ 5} A drug sniffing canine was also brought to the scene. The canine alerted the officers of various items within the vehicle including a film canister from the driver's door containing what appeared to be (and later tested positive as) crack cocaine, gold colored "Brillo Pads" that are commonly used as drug paraphernalia and a crack pipe. A tow truck was called to secure the vehicle.
 {¶ 6} Based upon the above information, Officer Bruns and another officer went to Bressler's residence to secure the residence while a search warrant was being sought. A female present at the residence opened the door and Sgt. Bruns observed in plain view what appeared to be marijuana and rolling papers on the table in the front room.
 {¶ 7} After securing the residence, Sgt. Bruns went back to the police department to prepare the search warrant. Sgt. Wiegle arrived at the police department while Officer Bruns was preparing the search warrant. Officer Bruns prepared the entire search warrant except for page five which was prepared by Sgt. Wiegle. Sgt. Wiegle accompanied Officer Bruns to the residence of the Common Pleas judge for the purpose of getting the search warrant signed; however, Officer Bruns was the only one who signed the affidavit in front of the Common Pleas judge and Sgt. Wiegle did not speak to the Judge other than to say good morning. The Common Pleas judge issued the search warrant based entirely on the information in the affidavit in support of the warrant. Upon executing the search warrant, a significant amount of drugs and drug paraphernalia were seized from the Bressler residence.
 {¶ 8} On December 20, 2004, Bressler was indicted by the Van Wert County Grand Jury for two counts of Possession of Cocaine, one count of Possession of Marijuana, and one count of Aggrevated Possession of Drugs. On December 22, 2004, Bressler was arraigned and plead not guilty. On February 10, 2005, Bressler filed a Motion to Suppress Search Warrant and Memorandum in Support. On February 14, 2005, the State filed a Memoradum Contra Defendant's Motion to Suppress. On March 7, 2005, Bressler filed a Supplemental Motion to Suppress Search Warrant and Memorandum in Support. The Trial Court conducted a hearing on May 5, 2005 and overruled the motion. On May 18, 2005, Bressler entered a no contest plea and the trial court found him guilty of the above mentioned offenses. On June 3, 2005, the Judgment Entry of conviction and sentence was filed sentencing Bressler to a mandatory term of 4 years for count one and a basic prison term of 11 months for count two, three, and four with said sentences to be served concurrently and a mandatory fine of seven thousand five hundred dollars.
 {¶ 9} Bressler first appealed this case on June 16, 2005; however, this Court dismissed the case on June 27, 2005 for lack of jurisdiction because there was an outstanding forfeiture issue. The forfeiture issue was addressed in the July 28, 2005 Judgment Entry. Therefore, on August 9, 2005, the defendant-appellant timely filed his notice of appeal raising the following assignment of error:
THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TOSUPPRESS AND SUPPLEMENTAL MOTION TO SUPPRESS THE EVIDENCE
 {¶ 10} Appellate review of a decision on a motion to suppress evidence presents a mixed question of law and fact. UnitedStates v. Martinez (C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact and is in the best position to resolve factual questions and evaluate the credibility of witnesses. State v. Carter (1995),72 Ohio St.3d 545, 552, 651 N.E.2d 965. When reviewing a trial court's decision on a motion to suppress, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Dunlap (1995),73 Ohio St.3d 308, 314, 652 N.E.2d 988. We must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of the witnesses," and then independently review whether the trial court applied the correct legal standard.State v. Anderson (1995), 100 Ohio App.3d 688, 691,654 N.E.2d 1034.
 {¶ 11} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures." Accordingly, the State is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant. United Statesv. Chadwick (1977), 433 U.S. 1, 7, 97 S.Ct. 2476,53 L.Ed.2d 538, overruled on other grounds in California v. Acevedo
(1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619.
 {¶ 12} The Ohio Supreme Court has previously held that:
[i]n determining the sufficiency of probable cause in anaffidavit submitted in support of a search warrant, `[t]he taskof the issuing magistrate is simply to make a practical,common-sense decision whether, given all the circumstances setforth in the affidavit before him, including the `veracity' and`basis of knowledge' of persons supplying hearsay information,there is a fair probability that contraband or evidence of acrime will be found in a particular place."
 State v. George (1989), 45 Ohio St.3d 325, syllabus, citingIllinois v. Gates (1983), 462 U.S. 213, 238-39, 103 S.Ct. 2317,2332. In the United States Supreme Court's seminal case regarding determinations of probable cause to issue search warrants,Illinois v. Gates, the Court stated that the definition of probable cause "`means less than evidence which would justify condemnation * * *. It imports a seizure made under circumstances which warrant suspicion.'" Gates, 462 U.S. at 235, quotingLocke v. United States (1813), 11 U.S. 339, 348, 3 L.Ed. 364. Thus, "[i]t is clear that `only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause,'" Gates, 462 U.S. at 235, quoting Spinelli v.United States (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, abrogated by Gates, supra.
 {¶ 13} When "reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by [a judge or] magistrate [under the totality of the circumstances analysis of Gates], neither a trial court nor an appellate court should substitute its judgment for that of the judge or magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant." George, 45 Ohio St.3d at paragraph two of the syllabus. Accordingly, the issuing judge or magistrate is to be accorded great deference and "doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id. citing Gates, supra.
 {¶ 14} Therefore, under the totality of the circumstances analysis of Gates, the precise question before this Court in this case is simply whether we can say that the search warrant affidavit provided a substantial basis for the judge's conclusion that there was a fair probability that illegal drugs or related paraphernalia would be found in Bressler's residence.
 {¶ 15} In this case, the Affidavit for the Search Warrant which was sworn to by Officer Bruns on December 19, 2004, at 4:46 a.m. states: (errors appear as they appear in the Affidavit)
Sgt. Weigle stopped Raymond Bressler for weaving in his laneand driving over a curb. Sgt. Weigle approached the vehicle andspoke with Raymond Bressler. Someone inside the vehicle attemptedto hide something under the front seat. Sgt. Weigle removedBressler from the vehicle Bressler was very hyper and would notlisten to verble comands to stand still and keep his hands out ofhis pockets. Bressler attempted to approach his vehicle whileSgt. Weigle was talking to other passengers in the vehicle. Asearch was done of the vehicle. A Marijuana joint was located inthe ashtray. A crack pipe was located under the passenger side ofthe vehicle. Bressler was was patted down for officer safetyprior to being placed under arrest nothing found on the pat down.Sgt. Weigle advised to place Bressler under arrest for possessionof Marijuana and drug paraphernalia. A search was done ofBressler's person. I located a bag of white power (later testedpositive for Cocaine) in Bressler's pocket. A K-9 search was doneon the vehicle. The k-9 alerted on the Marijuana and crack pipelocated inside the vehicle. The K-9 also alerted toaglass vile onthe driver seat. There were brand new packs of copper pads in theback of the vehicle. Bressler stated he was going home. I spokewith a passenger of the vehicle Robert Pollock. Pollock advisedthey had just left Bressler's house and was going backtoBressler's. Pollock advised there was a crack pipe on a tableinside the residence. Pollock also advised he was at the houseearlier and there was cocaine in the house in a blue bag. Pollockstate I should hurry becasue there was a female inside the houseand she would destroy the evidence. My self and OfficerRichardson went to bressler residence on S. Tyle St. Lyda Gaskillanswered the door. I identified myself as an officer with the VanWert PD. I advised her I needed to come in the house to securethe house. I observed in plain view what appeared to be Marijuanaon the coffee table and two books of rolling papers.
 It should be noted that the person inside the vehicle that wastrying to hid something was Raymond Bressler. He was trying tostuff something between the drivers seat and center console. Thisitem was later identified as a glass vial. The S.O. K-9 alertedon this item. Also located in the vehicle located in the dirversside dore pocket was a film canister inside was a white in colorrock substance which was alerted by the K-9 also. This item isconsistent with crack cocaine.
 Under the passenger seat was a crack pipe. In the passengerseat was Gregory Thatcher known for being a drug user. He hasalso been convicted of selling cocaine and steroids. Thatcheralso had a galss vial in his back pocket. These glass Vials areknow to ccok cocaine.
 {¶ 16} Based upon this affidavit, the Common Pleas judge issued and executed the requested search warrant for Bressler's residence on December 19, 2004 at 5:13 a.m. Upon review of the search warrant affidavit, we question whether the affidavit provides sufficient basis to conclude that the person in the Bressler residence was in the process of destroying the evidence, such that a police officer would be justified in entering the residence to secure it pending the arrival of the warrant, based on exigent circumstances. However, it is possible, that the issuing judge found there to be enough evidence to provide that there was sufficient probable cause without the evidence from inside the Bressler residence to execute a search warrant. Specifically, the issuing judge is to be accorded great deference in executing a search warrant. George, 45 Ohio St.3d at paragraph two of the syllabus.
 {¶ 17} Nevertheless, even if we were to determine that the affidavit, without the "plain view" observation of the officer inside the residence did not provide the judge with a substantial basis for concluding that there was probable cause to search the premises, we would still be compelled to uphold this search based upon the "good faith exception" to the exclusionary rule set forth by the United States Supreme Court in United States v.Leon (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 and subsequently adopted by the Ohio Supreme Court in State v.Wilmoth (1986), 22 Ohio St.3d 251, 490 N.E.2d 1236; see, also,George, 45 Ohio St.3d at 330, 544 N.E.2d 640.
 {¶ 18} In Leon, the United States Supreme Court determined that the exclusionary rule of the Fourth Amendment "should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." George, 45 Ohio St.3d at 330, 544 N.E.2d 640, citingLeon, 468 U.S. at 918-23, 929. In Leon, the Court reasoned that barring evidence obtained by officers acting in objectively reasonable reliance on a search warrant, which was later determined to not be based on probable cause due to the error of the issuing magistrate, did not further the purpose of the exclusionary rule. Leon, 468 U.S. at 921. However, the Court specifically held that the reliance by the officer on the search warrant must be objectively reasonable in order for the good faith exception to apply. Id. at 922-23.
 {¶ 19} The United States Supreme Court determined that a warrant may be suppressed as an appropriate remedial measure if certain circumstances exist that would indicate a lack of good faith on the part of law enforcement officals. Id. at 923. InGeorge, the Ohio Supreme Court stated that:
[s]uppression remains an appropriate remedy where (1)` * * *the magistrate or judge * * * was misled by information in anaffidavit that the affiant knew was false or would have known wasfalse except for his reckless disregard of the truth * * *'; (2)`* * * the issuing magisrate wholly abandoned his judicial role* * *'; (3) an officer purports to rely upon `* * * a warrantbased on an affidavit ` so lacking in indicia of probable cuaseas to render official belief in its existence entirelyunreasonable'"; or (4) `* * * depending on the circumstances ofthe particular case, a warrant may be so facially deficient —i.e., in failing to particularize the place to be searched orthe things to be seized — that the executing officers cannotreasonably presume it to be valid. * * *' (Citations omitted.)Leon, supra, at 923, 104 S.Ct. at 3421.
 George, 45 Ohio St.3d at 331.
 {¶ 20} In this case, none of the above mentioned circumstances necessary to preclude application of the good faith exception are present. There has been no allegation or evidence that the information contained in the affidavit was given falsely or in reckless disregard of the truth. In addition, even without the information from within the house, the affidavit was not so lacking in indicia of probable cause that it would render the police officer's belief in its existence entirely unreasonable. Furthermore, the search warrant was not facially deficient. Rather, the search warrant was specific as to the location and items to be seized; thus, the police officer's who searched the Bressler residence acted in objectively reasonable reliance on the search warrant issued by the Common Pleas judge.
 {¶ 21} Accordingly, the trial court did not err in overruling Bressler's motions to suppress, and the assignment of error is overruled. Therefore, the June 3, 2005 Judgment of conviction and sentence entered in the Van Wert County Court of Common Pleas, Ohio is affirmed.
Judgment affirmed.
 Bryant, P.J., and Cupp, J., concur.